96 679
43a 203

SIMMONS, *Administrator*, v. HILL, *Appellant*.

1. **Corporation:** BANK: STOCKHOLDER. One who levies upon and sells bank stock under an execution against the former owner, in ignorance of the fact that the latter had previously transferred it upon the books to others, and who purchases at such sale, obtains no title, and is not liable as a stockholder under section 736, Revised Statutes of 1879.

2. —— : —— : ——. Although such purchaser, after his purchase, demanded that the stock be transferred to him upon the books and for refusal brought suit for damages against the bank, which he dismissed upon learning the facts, he cannot be bound as a stockholder by a transfer of the stock to him without his knowledge and consent, where he did not ratify the transfer but repudiated it when it came to his knowledge.

*Appeal from St. Louis City Circuit Court.*—HON. E. B. ADAMS, Judge.

REVERSED.

*Britton A. Hill pro se.*

( 1 ) The levy and sale of the stock of Langton and of Chambers, on the execution of Hill & Collins against Peter Curran, was null and void and passed no interest in the stock to the purchasers. Binmore on Sheriffs,

secs. 102, 111, 112. ( 2 ) An execution against Peter Curran in 1877, cannot be levied upon bank stock duly registered on the stock-book of the bank in the names of Langton and of Chambers for six years, then past. *Ib.* sec. 112. ( 3 ) No levy can be made upon bank stock once owned by a pledgeor, who has transferred and assigned it absolutely to a pledgee, on the books of the bank, to secure the payment of a debt to become due and which was due and unpaid at the time of the issue of the execution. *Carroll v. Bank*, 8 Mo. App. 249. ( 4 ) The owners of the stock after the ninth of August, 1871, were Langton for fifty shares and Chambers for fifty shares, and they were the only persons liable to the creditors of the bank as stockholders of the Curran stock from August, 1871, down to the thirteenth of July, 1877, when they fraudulently attempted to transfer their stockholders' liability over to B. A. Hill and R. E. Collins after the bank had failed and closed its doors. Thompson on Liab. of Stock., secs. 177, 178. ( 5 ) A transfer of stock in a bankrupt company to a party who has not accepted the stock, has no effect on the title, and does not make the transferee liable to creditors unless he accepts the transfer. *Webster v. Upton*, 91 U. S. 71, 72.

*Martin, Laughlin & Kern* also for appellant.

*H. I. D'Arcy* and *J. P. Maginn* for respondent.

( 1 ) It was not necessary to move against Hill & Collins jointly. *Bray's Adm'r. v. Seligman*, 75 Mo. 41. ( 2 ) Hill, by the purchase at sheriff's sale, was placed in Curran's shoes, in respect to the stock. Curran was utterly divested of his property in the stock. R. S. secs. 2363-64, 2391 ; *Foster v. Potter*, 37 Mo. 526 ; *Bank v. Richards*, 6 Mo. App. 440. ( 3 ) Hill, as the registered owner of the shares, must pay the amount due thereon to the bank's creditors. Thompson on Stockholders, sec. 177, *et seq.* ; *Upton v. Burnham*, 3 Biss. 520 ; *Hawley v. Upton*, 102 U. S. 314 ; *Webster v. Upton*, 1

Otto, 65, 71 ; *Johnson v. Laflin*, 6 C. L. J. 129 ; Cook on Stockholders, sec. 384 and cases cited ; *Kellogg v. Still-well*, 75 Ill. 68 ; *Johnson v. Underhill*, 52 N. Y. 203 ; *White, Ex'r, v. Salisbury*, 33 Mo. 153 ; *Erskine v. Low-enstein*, 11 Mo. App. 595. ( 4 ) There was no lien on the stock under article 4 of its articles of incorporation, the bank having taken a specific transfer to its trustees in pledge, to secure the money loaned to Curran, but if there was, Hill cannot complain of its waiver by the bank in his favor. Besides, Chambers and Langton were not indebted to the bank. *Helm v. Swiggett*, 12 Ind. 194; Cook on Stockholders, secs. 528, 529. ( 5 ) Such provisions are solely for the protection of the corpora-tion, and in no manner affect the validity of transfers between the parties thereto. *Bank v. Goodfellow*, 9 Mo. 150 ; *Chouteau v. Harris*, 20 Mo. 382 ; *Moore v. Bank*, 52 Mo. 377-379 ; *Kahn v. Bank*, 70 Mo. 262 ; *Bank v. Richards*, 74 Mo. 77 ; *Johnson v. Laflin*, 103 U. S. 800 ; *Carroll v. Bank*, 8 Mo. App. 249, 252. ( 6 ) Hill is estopped to deny his title to the stock. "He cannot assert his title if there is a profit, and deny it if there is a loss." *Fisher v. Seligman*, 75 Mo. 13, 14 ; *Griswold v. Seligman*, 72 Mo. 110. ( 7 ) If Hill had never been registered as owner of the stock he would nevertheless be liable to creditors, as the equitable owner thereof. *Hill v. Newichawanick Co.*, 48 How. Pr. 427 ; *McNeill v. Bank*, 46 N. Y. 325 ; *Leitch v. Wells*, 48 N. Y. 592 ; Cook, Stockholders, sec. 4 and cases cited, note 4 ; *Anderson v. Warehouse Co.*, 111 U. S. 484, 485 ; *Wheeler v. Faurot*, 37 Ohio St. 26 ; *Storer v. Flack*, 30 N. Y. 64 ; *Henkle v. Mfg. Co.*, 39 Ohio St. 553 ; Cook on Stock-holders, sec. 264 and cases cited ; *Cutting v. Damerel*, 88 N. Y. 410 ; *Isham v. Buckingham*, 49 N. Y. 216 ; *Strange v. Railroad*, 53 Tex. 162 ; *Warehouse Co. v. Badger*, 67 N. Y. 294 ; *Laing v. Burley*, 101 Ill. 591 ; *Brown v. Hitchcock*, 36 Ohio St. 667 ; *Whitney v. Butler*, 118 U. S. 655 ; *In re South Mountain Co.* 7 Sawyer, 32.

BRACE, J.—On the seventh of April, 1881, plaintiff's intestate obtained a judgment in the circuit court of St. Louis against the Butchers' & Drovers' Bank for the sum of $10,880, and an execution issued thereon on the twenty-fifth of that month was returned *nulla bona* on the sixth of June, 1881. At the April term, 1883, of said court the plaintiff moved for an execution against the defendant as a stockholder in said bank ; the motion was resisted and on the hearing, was sustained and an execution ordered against the defendant in the sum of five thousand dollars, and from this order the defendant appeals.

The facts in the case as they appeared in evidence are substantially as follows : On the seventh day of December, 1870, Peter Curran, being then the owner of one hundred shares of the capital stock of said bank, of the par value of ten thousand dollars, fifty per cent of which was unpaid, borrowed from the bank the sum of two thousand dollars, for which he executed his note payable in ninety days, bearing ten per cent. interest, and at the same time, transferred, on the books of the bank, fifty shares of his stock to P. S. Langton. On the eighth of May, 1871, Curran borrowed the further sum of $3,964.50, for which he executed two notes, bearing same rate of interest, and, at the same time, transferred to B. M. Chambers, the remaining fifty shares of his stock. Chambers was the president and Langton was the cashier of the bank. According to the testimony of Chambers, by an oral agreement, the stock was to be held by him and Langton as collateral security for these loans.

On the twenty-seventh of April, 1877, while the stock thus stood in the name of Langton and Chambers, Hill & Collins, a firm of which the defendant was a partner, obtained judgment against Curran for twenty-five hundred dollars, and caused execution to be issued thereon.

The officer holding the execution repaired to the bank, and demanded a statement of the amount of stock held by Peter Curran, and the cashier thereupon gave him the following certificate: "There is no stock of the Butchers' & Drovers' Bank in Peter Curran's name. P. S. Langton, cashier." And the sheriff endorsed the following return on the execution: "Executed this writ in St. Louis county on the seventh of May, 1877, by levying upon one hundred shares of stock in the Butchers' & Drovers' Bank, as the property of Peter Curran, the defendant, and I delivered a copy of this writ to B. M. Chambers, president of said bank, with my endorsement of said levy thereon, stating to him that I did levy on and take such rights and shares to satisfy this writ."

On the same day, the sheriff advertised for sale on the nineteenth of May, 1877, the interest of Curran in said one hundred shares of stock to satisfy said execution, and at the sale, it was struck off to Hill & Collins for one thousand dollars, which amount, after deducting costs, was credited on the execution, and as to the remainder the writ was returned *nulla bona*, on the fourth of June, 1877, with this additional return: "I delivered a copy of this writ, together with the advertisement, a copy of which is hereto attached, to P. S. Langton, cashier of the Butchers' & Drovers' Bank, with my return of levy and sale of one hundred shares of stock above mentioned and offered to transfer said stock to the purchasers, but was assured the defendant had none to transfer." Curran had never paid anything on his notes, and at the time of this sale, they were long over-due, and amounted, principal and interest, to more than nine thousand dollars.

On the twelfth of July, 1877, Hill & Collins brought suit against the bank for five thousand dollars damages for refusing to permit a transfer of Curran's stock upon the books of the bank. On the thirteenth, the writ was

served on Chambers, the president, and on the same day, he and Langton transferred the one hundred shares of stock in their name to Hill & Collins on the books of the bank without their knowledge or consent. On the same day, the bank closed in an insolvent condition and ceased to do business. At the time of the transfer from Curran to Chambers and Langton, the stock of the bank was worth in the market probably seventy to eighty cents on the dollar of paid-up stock. At the time of the levy of Hill & Collins there was no demand for it, and when transferred to them by Chambers and Langton was worth nothing.

On the second of October, 1877, the bank filed an answer in the suit of Hill & Collins, and on the twenty-eighth of January, 1878, an amended answer, in which, after denying the allegations of the petition and that Curran was the owner of any stock in the bank except as thereinafter stated, then proceeded to set out the transfer of the stock by Curran to Chambers and Langton to be held by them as collateral security for the payment of the notes before mentioned with interest, averring that said notes and interest remain due and unpaid, and setting up the provision in the charter of the bank, prohibiting a transfer except on its books, and after all debts due by the shareholder had been paid, but saying nothing about the transfer by Chambers and Langton to Hill & Collins on the thirteenth of July preceding. On the trial, on the evidence in support of the answer, Hill & Collins took a non-suit. They were by the answers in this case, for the first time, informed that Curran had transferred his stock to Langton and Chambers; and more than five years afterwards the defendant was first informed, by the commencement of this proceeding against him, that Langton and Chambers had transferred the stock to Hill & Collins. On this state of facts the circuit court held that the defendant was a holder of said unpaid-up stock, and as

such, subject to execution upon plaintiff's judgment against the bank to the amount remaining unpaid thereon.

The only question presented on the record of this case is, was the defendant Hill a stockholder of the Butchers' & Drovers' Bank on the eighth of June, 1881, within the meaning of section 736, Revised Statutes, 1879? It will be observed from the foregoing statement, that if Hill was such stockholder, it must be because he became so, either by virtue of his purchase at the execution sale of Curran's stock, or by virtue of the transfer of stock to him by Chambers and Langton. It therefore becomes necessary to enquire what were the legal relations of these parties to the stock. The transfer by Curran of his stock to Chambers and Langton was to them individually, on the books of the bank, absolute and unconditional. By that transfer they became the legal owners of the stock, entitled to vote it, draw dividends on it, and to the extent of it, exercise control and management of the affairs of the bank, and became liable as holders of it to creditors of the bank. Curran then ceased to be a stockholder in the bank so far as that stock was concerned. He had, in good faith, for a valuable consideration, parted with it, and as to subsequent creditors of the bank was no longer liable as a stockholder, having lost the power either to protect them or himself; although he may have had an equity in respect of that stock against the holders, by virtue of a parol agreement made at the time of its transfer.

"It is thoroughly established that one to whom stock has been transferred in pledge, or as collateral security for money loaned, and who appears on the books of the corporation as the owner of the stock, is liable as a stockholder for the benefit of creditors." *National Bank v. Case*, 99 U. S. 628. "Where shares are held by a person as trustee for another, the legal holder of the shares, and not the equitable owner, is

primarily liable both to the company and its creditors. Neither the company nor its creditors would be entitled to charge the equitable owner as shareholder." 2 Morawetz on Priv. Corp. sec. 853. "Unless the rule has been changed by statute, liability to pay calls and to respond, in the case of insolvency, to creditors, attaches to the holder of the *legal title* only; the courts will not look beyond the registered shareholder, nor enquire under what equities he holds." Thompson on Liab. of Stockholders, sec. 178.

It follows, that during the six years of the existence of this bank, after the transfer of Curran, during which time by its management the value of the stock was reduced from seventy-five cents on the dollar to nothing, those dealing with the institution were, by the books of the bank and the law of the land, pointed to Chambers and Langton as the stockholders liable to respond to them for the amount unpaid on these one hundred shares of stock, in case they should be compelled to resort to that fund for satisfaction of their demands.

And in this summary proceeding, in which the court is charged with the duty of ascertaining who is the stockholder to be legally charged with liability for plaintiff's debt, and not to settle the equities between Curran's vendee, the bank or its creditors, and the legal owner of the stock, the question that becomes important is, not who stands in Curran's shoes but who stands in the shoes of Chambers and Langton, if they have ever legally cast them off? For this purpose, it is not necessary to define what, if any, interest or right the defendant acquired under the execution sale. He did not acquire Chambers' and Langton's stock, for the process was not against them. Curran had none, and the defendant acquired none by his purchase, and did not by reason of that purchase become a stockholder. Did he become one by virtue of the transfer of Chambers and

Langton on the thirteenth of July ? "The general rule is that a person whose name appears on the books of a corporation is a shareholder both as to the corporation and as to the public." Thompson on Liab. of Stockholders, sec. 177. This supposes, of course, that the shares have been placed in his name with his consent. As was remarked in *Chapman and Baker's* case, 3 L. R. Eq. Cas. 360 : "If the mere placing a name upon the register, rightly or wrongly, is to give the creditors a right to proceed against the individual, any one of us now in this court might find himself upon the register of some company, and liable to its creditors. It is an absurdity to say that I am to be liable because directors choose to put me down upon the register as a shareholder. * * * The case is wholly different where a person agrees to have his name put upon the register for any purpose. The creditors have a right to take as their debtor everybody who is properly upon the register, including the trustees for the company. But creditors do not, therefore, obtain the right of insisting upon retaining as their debtor a person whose name has been placed there by fraud or wrong, or ought never to have been there at all. An important question might arise as to how far a person, after he knows that his name has been wrongly placed upon the register, may by acts of acquiescence—such as accepting a dividend, or the like—be held to be liable. It is like any other case : he cannot approbate and reprobate. If, for his own convenience, he adopts the act, he must be liable for the consequences of the act. The question whether he has, or has not, adopted it is wholly one of degree and of evidence for the court. But I cannot entertain any doubt that a man who is placed by the directors, through contrivance, in a position which they are not entitled to place him in, will not be liable to creditors or to anybody else."

As Hill knew nothing of this transfer by Chambers

and Langton to Hill & Collins, until the motion in this case was filed for execution against him, and as from that moment he has been persistently repudiating it, it cannot be pretended that he ever expressly agreed to the transfer or ratified it, by any act or word of his after it was done.

But it is insisted, that, by his acts, he by implication authorized it to be done, and is now estopped from denying that it was done with his assent; that if Hill & Collins did not by their purchase at the execution sale become the owners of the stock that stood in the name of Chambers and Langton, and did not thereby become stockholders in the bank, they did, by virtue of that purchase, acquire the equity that Curran had as against the bank and Chambers and Langton, to redeem the stock, and that they must be held by their acts, in acquiring that equity and their subsequent action, to have requested a redemption, which was accepted by Chambers and Langton and the bank, and that the transfer made to them was in pursuance of that request, and that the defendant thus became a stockholder of the bank. We are cited to the case of *Foster v. Potter*, 37 Mo. 526, in support of the proposition that Hill & Collins, by their purchase at the execution sale, acquired Curran's equity of redemption in the stock. Without stopping to distinguish this case from that one, and without being understood as holding either that Curran had an equity of redemption in this stock upon the facts in the case, or that if he had, it passed by the execution sale, for the sake of argument, let it be conceded that he had such an equity, that it passed by the sale, and, that the argument may flow unimpeded, let any objection that might be raised to considering the bank and its trustees as one in their transactions, or the right of the trustees to give away the trust fund, be waived, do we find in the evidence any fact from which, at any time, either the bank, Chambers or Langton would be authorized to

infer a request upon the part of Hill & Collins that the incumbered stock should be transferred to them? Unless we do find such a fact the defendant is not estopped from denying that it was assigned at his request.

A brief consideration of the salient facts in the case will answer this question, and for this purpose the further mention of the name of Collins may be omitted. The defendant, having a judgment for twenty-five hundred dollars against Curran, being desirous of making his debt, and believing that Curran was the owner of stock in the bank, and that something might be made out of it, sues out his execution. The officer goes to the bank for the purpose of levying the execution on Curran's stock, if he has any, and informs the officers of his purpose. The law then made it the duty of the cashier to furnish the officer with a certificate, under his hand, stating the number of shares the defendant in the execution held in the stock of the bank "*with the encumbrance thereon.*" The cashier certified that "there was no stock in the bank in Curran's name." Is it to be supposed, for a moment, that if Curran had then been regarded by the officers of the bank as the holder of this stock, half paid up, worth in the market less than forty cents on the dollar, encumbered with a debt to the bank of more than nine thousand dollars, and with a contingent liability for the amount unpaid thereon, and they had so certified, as it was their duty to do, that the subsequent levy and sale would have been proceeded with? If they had done so, the defendant would have seen at once that he was engaged in a vain pursuit and would doubtless have abandoned it as quickly as he did a similar one, at a later stage in the proceedings, when the officers of the bank first disclosed such a state of case in the answers, and supported it by their evidence in the suit instituted by him against the bank for their refusal to

permit a transfer on their books of Curran's supposed stock.

The defendant was seeking, by due process of law, to subject Curran's stock, if he had any, to his debt. In attempting to do so, he claimed to have become the owner of that stock by purchase under legal process, and asked that a transfer be made on the books of the bank in pursuance of such purchase. The bank refused to permit such transfer to be made, and, when sued for damages for such refusal, by showing that at the time of the levy and sale Curran had no stock in the bank, that Chambers and Langton were the owners of the stock that Curran once owned, that Curran had a mere equity and a worthless one at that, against the then holders of that stock, satisfied him that he had acquired nothing by his purchase, he abandoned his action for damages as he would doubtless have abandoned his pursuit of Curran's suppositious stock before the sale, if they had given him this information at the time it was their duty to have done so. The defendant was after Curran's stock; he did not get it because years before Curran had parted with it to Chambers and Langton. He was not after Chambers' and Langton's stock. He couldn't have gotten it, if he had wanted it, by that process, and wouldn't have wanted it, if he could have gotten it, burdened as it was with liabilities far exceeding its value.

This effort, made by the defendant to subject the supposed stock of Curran (in his ignorance of the disposition that Curran had long since made of it) to the payment of his debt, and his subsquent action for damages, superinduced by the failure of the officers of the bank to give him timely and proper information of the actual condition of the stock, is the sole ground upon which is rested the claim that the transfer made by Langton and Chambers to defendant on the thirteenth of July, 1877,

was made at the request of defendant.    Conceding then, that the defendant acquired the right to redeem this stock from Chambers and Langton, he never exercised it, or sought to exercise it.    They couldn't exercise it for him, and without his consent, thrust upon him obligations which they had incurred, by the ownership of this stock up to the very hour that the shades of bankruptcy closed in around the institution and rendered his stock worthless.    This transfer was not made in answer to any demand ever made by Hill to redeem the stock, for he never made such a demand.    The only demand that he ever made or that was ever made in his behalf, was that the officer who made the sale under the execution might transfer on the books of the bank, the stock of Curran's that he undertook to sell.    If that demand had been granted, and the transfer had been made by him, Langton and Chambers would have still remained the holders of the stock that Curran once owned, by virtue of his previous transfer to them, and Hill, by such transfer, would not have become the owner of that stock, or a stockholder of the bank.    How, then, can it be held that this secret transfer by them can enlarge the scope of that demand, or be held to be in compliance with it?    Upon what principle of law or equity, can the defendant be estopped from asserting that such transfer was without his assent?    Every dollar of indebtedness incurred by the bank upon the faith of this unpaid stock, was upon the faith of the legal ownership of that stock by Chambers and Langton, and it would be monstrous to hold that, as these officers closed the doors of that institution which they had conducted to the brink of financial ruin, to any future credit, upon the faith thereof, they could, in the act of doing so, unload their present obligations, incurred upon the faith of their past ownership of that stock, upon the shoulders of the defendant ; or that the creditors of this bank, by their

act, could acquire a right to look from those whom they had trusted, to him whom they had not trusted, to answer their demands, simply because he himself had been trying to secure his debt from one who had formerly been, but had long since ceased to be, a stockholder in the bank.

There can be no doubt that the defendant was not a stockholder in the bank when the execution against it was returned *nulla bona*, and that the trial court committed error in holding that he was. The judgment of that court is therefore reversed. All concur except RAY, J., absent.