Bagley v. Tyler.

43 195
43 492
43 195
131m672

# V. W. BAGLEY, Respondent, v M. S. TYLER, Appellant.

## Kansas City Court of Appeals, January 5, 1891

1. **Corporation**: DOUBLE LIABILITY OF STOCKHOLDER: REMEDY: TRIAL BY THE COURT. Whether the proper remedy of a creditor to enforce the double liability of a shareholder is by action at law or suit in equity, is of no consequence, where the trial was by the court (the chancellor), and on a petition, in all substantial requirements, a good and sufficient bill in equity. But an action at law is the proper remedy.

2. —— : —— : CONTRACT: PENALTY: COMITY. The shareholder's double liability grows out of a contract, and he occupies the attitude of a promisor to the creditor (promisee) to pay, in case of default by the corporation, and is not in the nature of a penalty imposed for misconduct on the part of officers and agents; and such contract will (when not immoral or opposed to the public policy of the forum) be enforced everywhere not *ex proprio vigore*, but only *ex comitate*.

3. **Legal Title**: COLLATERAL SECURITY. In the absence of an express statute to the contrary the liability to pay calls and to respond to creditors, in the event of insolvency of the corporation, attaches to the holder of the legal title of the stock, and the courts will not look beyond the registered shareholder, nor inquire under what equity he holds, and so one who takes stock as collateral security, and has it transferred to himself and so registered on the books of the company, will be liable to the creditor.

4. —— : ——. The owner of the stock at the return of the execution against the corporation is liable for all debts of the insolvent corporation to the extent of his stock, regardless of the time such debts accrued.

5. —— : —— : SUIT : EXECUTION : HOME FORUM. Where the statute imposing the double liability provides, "if any execution shall have been issued" against the corporation and no property found, then the shareholder's liability is fixed : the bringing of a suit and the issue of an execution in the courts of one of the places where the corporation was authorized to do business is sufficient, and the creditor is not compelled to bring the suit in another jurisdiction, or take out a roving execution.

6. —— : —— : OTHER SECURITY. Defendant's claim that plaintiff had other security for his debt is examined on the evidence and found unsupported thereby.

*Appeal from the Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Beebe, Randolph & Watson,* for appellant.

(1) The statute of Kansas is almost identical with article 8, section 6, of the constitution of 1865 of Missouri, creating double liability of stockholders. Our supreme court construed the statute penal in its nature. *Krizer v. Woodson,* 19 Mo. 327–330; *Ochiltree v. Railroad,* 54 Mo. 113. (2) Statutes penal in their nature will not be enforced in another state. Cook on Stock and Stockholders, sec. 218; Story on Conflict of Laws, sec. 621; Rorer on Inter-State Law, secs. 148–149; *Ogden v. St. Joe,* 90 Mo. 522. (3) Appellant was not liable as a stockholder, because the ten shares of stock were held by him as collateral security. Story on Conflict of Laws [Redfield's Ed.] secs. 76, 242, 280; *Anderson v. Pond,* 13 Peter, 65. (4) One holding shares of stock in this state as collateral security is not liable as a shareholder to the corporation or its creditors. *Savings Ass'n v. Seligman,* 92 Mo. 635; *Burges v. Seligman,* 107 U. S. 20. (5) The debt, respondent is seeking to enforce against appellant, was created long before the stock of the Cherokee Brilliant Coal & Mining Company was issued to appellant, and appellant's statutory liability, if any, was to the creditors whose debts were contracted by the corporation subsequent to the transfer of the stock to defendant. The statutory liability does not attach to the shareholder in respect of debts contracted before he became a member of the corporation. Cook on the Law of Stock and Stockholders, sec. 263; *Tracey v. Yates,* 18 Barb. 152. (6) The testimony shows that at the time respondent obtained his judgment in the state of Kansas, against the Cherokee

Brilliant Coal & Mining Company, and at the time execution was issued and returned *nulla bona*, such assets of the corporation as were in Missouri were in the hands of a receiver, Mr. Steubenrauch, of Kansas City; under the circumstances equity was the proper forum in which to proceed in this state against resident stockholders. *Shickle v. Watts*, 94 Mo. 418. (7) By the charter of the Cherokee Brilliant Coal & Mining Company offered in evidence by plaintiff, the corporation was authorized to and did engage in business at Stellson Station, Cherokee county; Wyandotte, Wyandotte county, Kansas, and Kansas City, Jackson county, Missouri. The testimony shows that the corporation was engaged in business in Kansas City, Missouri, and Wyandotte, Kansas. No execution was issued against the corporation in Wyandotte county, Kansas, nor was any effort made to subject the corporate property to the payment of the judgment in Jackson county, Missouri. It is a rule that corporation creditors, before they can proceed against the shareholders on their statutory liability, must first exhaust their remedy against the corporation and its assets. Cook on the Law of Stock and Stockholders, sec. 221, and cases cited.

*Henry Wollman*, for respondent.

(1). The stockholders' liability, *i. e.*, the double liability imposed by the constitution and laws of Kansas, is a contract which the holder of stock enters into, at the time he acquires the stock. 2 Morawetz on Corps., secs. 872–873; *Flash v. Conn*, 107 U. S. 371; *Sav. Ass'n v. Jackson Place, etc.*, 52 Mo. 552; *Perry v. Turner*, 55 Mo. 418; *Supply Co. v. Cheever*, 2 Mo. App. 134; *Hodgson v. Cheever*, 8 Mo. App. 318; *Hawthorne v. Calef*, 2 Wall. 10. This "statutory and constitutional" liability being a contractual liability is assumed by each stockholder the moment he becomes such, regardless of the place where he resides, or then is, or

where the stock was delivered to him; that is, these statutes, being a part of the contract which the stockholder enters into when he becomes such, apply to all stockholders regardless of their place of business, or the place of the delivery of the stock to them, and the courts of all states where jurisdiction can be obtained over the stockholder will enforce the statutory liability, as they do all other contracts. Thompson on Liability of Stockholders, secs. 80–81; 2 Morawetz, secs. 874, 875; *Hodgson v. Cheever*, 8 Mo. App. 318; *Howell v. Manglesdorf*, 33 Kan. 104; *Ex parte Van Ripor*, 20 Wend. 614; *Paine v. Stewart*, 33 Con.; *Bank v. Price*, 33 Md. 492; *Payson v. Withers*, 5 Biss. 278; *Hutchins v. Mining Co.*, 4 Allen, 580; *Halsey v. McLean*, 12 Allen, 440; *Band v. Mining Co.*, 6 Lawyer's Rep. Annotated, 676. (2) It is claimed, for some reason, by the appellant that the suit brought by the plaintiff was at law and not in equity, and that there is no remedy except in equity. This case was tried before the judge alone. Under the code of Missouri the distinction between law and equity is abolished, and it is not necessary that the petition should designate whether the action is legal or equitable, but the facts must all be stated and then the court will give whatever relief is proper, whether the same be legal or equitable, or both. The courts have universally held under statutes like the Kansas statutes, that the action is at law, and we believe that no decision can be found to the contrary. *Flash v. Conn*, 107 U. S. 371, and cases therein cited (this is a leading case construing statutes identical with the Kansas statutes). *Perry v. Turner*, 55 Mo. 418; *Savings Ass'n v. Kellog*, 63 Mo. 640; *Hodgson v. Cheever*, 8 Mo. App. 318; *Howell v. Manglesdorf*, 33 Kan. 194; *Head v. Daniels*, 33 Kan. 1. (3) When once it is settled that this liability is contractual, the entire doctrine of its being penal in its nature is exploded and gone; however, whatever semblance of holding that way ever was in *Kritzer v. Woodson* has been overruled and brushed

away in *Perry v. Turner*, 55 Mo. 418, and other Missouri cases. *Hodgsòn v. Cheever*, 8 Mo. App. 321; *Providence Savings Inst. v. Jackson Place Rink.*, 52 Mo. 552; *St. Louis, etc., Co. v. Harbine*, 2 Mo. App. 134; *Hawthorne v. Calef*, 2 Wall. 10; *Ochiltree v. Railroad*, 21 Wall. 249; *Corning v. McCullough*, 1 N. Y. 47; *Wiles v. Suydam*, 64 N. Y. 176; *Norris v. Wrenschall*, 34 Md. 500; *Mokelumne, etc., Co. v. Woodbury*, 14 Cal. 266; *Dozier v. Thornton*, 19 Gas. 326; *Norfork v. Gas Co.*, 103 Mass. 160; *Nickerson v. Wheeler*, 118 Mass. 295; *Supply Co. v. Harbine*, 27 Mo. App. 134. (4) Although the stock was issued to Tyler, in his own name nearly two years before the failure of the company, and he has held the certificate ever since, he now sets up in his answer as a defense, that he is a holder of the stock as collateral security. That is no defense. (5) The appellant claims in his brief, that the statutory liability does not attach to the shareholder in respect to debts contracted before he became a member of the corporation. Those persons are stockholders within the meaning of these statutes imposing a liability on stockholders, who are such at the time of the return of the execution against the corporation. *McClaren v. Franciscus*, 43 Mo. 452 and 463; *Miller v. Ins. Co.*, 50 Mo. 55; *Skrainka v. Allen*, 76 Mo. 384; *Howell v. Manglesdorf*, 33 Kan. 194; *Childs v. Coffin*, 17 Mass. 64; *Bond v. Appleton*, 8 Mass. 472; *Bank v. Nagel*, 5 Conn. 26; *Nixon v. Green*, 11 Exch. 550; 2 Morawetz on Private Corp. 858; *Cleveland v. Burnham*, 55 Wis. 198; *Longly v. Little*, 26 Maine, 162; *Pullman v. Upton*, 6 Otto, 328; *Bank v. Case*, 9 Otto, 266.

GILL, J.—In the year 1882 a corporation was organized under the laws of the state of Kansas, with its home office in Cherokee county, Kansas; said corporation was known by the name of the "Cherokee Brilliant Coal & Mining Company, of Cherokee county, Kansas." In 1883, plaintiff Bagley became the owner of a number of shares

of stock in the corporation, and for a time acted as the
company's bookkeeper. But in December, 1885, plain-
tiff sold the stock to some parties in Chicago, and the
same was transferred on the books of the corporation.
These purchasers, being elected to the offices of the
company, thereafter had the complete management of
its business. During the conduct of the business, and
while Bagley was the holder of these shares of stock,
to-wit, in the year 1884, the corporation became indebted
to Bagley in about the sum of $2,000, and this remained
unpaid when Bagley sold his shares to the Chicago par-
ties. In October, 1886, about a year after Bagley had
parted with all interest in the corporation, he, Bagley,
recovered a judgment on account of this claim against
the Mining Company, in Cherokee county, Kansas, and
had an execution issued thereon against the company
which was in due time returned unsatisfied. Shortly
thereafter plaintiff began this action in the circuit court
of Jackson county, Missouri. In the petition, in addi-
tion to the facts hereinbefore stated, it is alleged, and
shown by the evidence, that on April 1, 1885, defendant
Tyler became the legal owner and holder of ten shares
(amounting to $1,000) of the stock in said corporation,
which he has continued ever since to hold. The laws
of Kansas are then pleaded (and shown at the trial)
whereby what is known as the stockholders' "double
liability" is created, and by reason thereof judgment
was prayed against defendant Tyler for the amount of
his stock, to-wit, $1,000. The answer, in addition to
specific denials of quite all the allegations of the peti-
tion, charged that plaintiff was still the owner of a large
number of shares of stock in the corporation—that if
assigned to others it was transferred to insolvent par-
ties, and for the purpose, on plaintiff's part, of evading
liability, etc. ; and the further defense was set up, that
the stock, so issued to the defendant, was simply held
by him as collateral security for a debt owing defend-
ant by an original stockholder. The cause was tried by

the court without the aid of a jury, plaintiff had judg-ment, and defendant appealed.

I.  Something is said in defendant's brief as to whether or not an action at law is maintainable against him for this liability on his stock in the Kansas corpo-ration.   It seems to be contended that a suit in equity is the proper remedy.   This position, whether rightly or wrongfully taken, is of no consequence in this par-ticular case.   It does not relieve defendant of the judg-ment here rendered against him ; for, as the record shows, this suit was tried by the court or tribunal authorized to try equity cases, and on a petition, in all substantial requirements, a good and sufficient bill in equity ; and on this the court ( or chancellor ) found the issues for the plaintiff.   So even measured by the remark made in the case relied on of *Shickle v. Watts*, 94 Mo., there is no substantial objection to this proceed-ing.   However, we regard an action at law as the proper remedy.   2 Morawetz on Corp., sec. 895, *et seq. ; Perry v. Turner*, 55 Mo. 426 ; *Hodgson v. Cheever*, 8 Mo. App. 323, and cases there cited.   In becoming a subscriber for his ten shares of stock in the Kansas cor-poration, the defendant assumed a personal, individual liability to its creditors of double the face value thereof, having paid the amount called for on the face of the certificate, the holder occupied the attitude of a promisor to the creditor ( promisee ) to pay, in case of default by the corporation, an additional $1,000, the equal of the stock by him held.   Kansas Const., sec. 2, art. 12 ; Compiled Laws of Kansas, 1881, sec. 32, art. 4, chap. 23.   This action was brought to enforce the payment of this contractual obligation, and is a suit at law.   But, as already said, it is immaterial what the pleader may call the action, whether a proceeding in equity or an action at law.   The facts are set out which constitute a good petition ( whether in law or equity ), and the cause was by consent of parties tried by the

judge, who was at all events the proper tribunal to set-
tle the controversy.

II. The next contention on defendant's part is
still more barren of merit. The claim is made, that this
action in Missouri is for the recovery of a mere *penalty*
fixed by the laws of Kansas, and the rule is invoked
that the courts of this state will not lend their aid to the
recovery of mere statutory penalties of other states.
What we have said under the last head applies here.
The defendant's liability grows out of his contract to
pay the unsatisfied creditor of the corporation a sum
equal to the amount of stock owned. "The line of
demarcation," says the St. Louis Court of Appeals in
*Hodgson v. Cheever*, *supra*, "between the provisions of
law here dealt with and those imposing penalties for
misconduct on the part of officers or others connected
with the corporation, in cases like these cited by
defendant, is too obvious for comment. Where there
is only a failure on the part of the corporation to pay
its legal debts, and in that contingency a liability of
stockholders, the creditors' rights arise out of contract,
and the obligation is of a corresponding nature,"—citing
numerous authorities. The stockholder of the foreign
corporation is, by virtue of his subscription, a contract-
ing party with the creditors thereof. The laws of its
corporate organization, as contained in its special char-
ter, or as set out in the general statutory provision
under which said foreign corporation is organized, enter
into and make the terms of the stockholder's engage-
ment. This contract, so made, will (when not immoral
or opposed to the public policy of the forum) be
enforced everywhere, not *ex proprio vigore* but only
*ex comitate.* Thompson on Liability of Stockholders,
sec. 80 ; 2 Mor. on Corp., secs. 872–877.

III. Now the next matter of defense comes from
this state of facts : The ten shares of stock, upon which
it is now sought to charge defendant Tyler, were for-
merly owned by one Parker. About eighteen months

before the failure of the Mining Company, Parker, being indebted to Tyler, assigned the stock to Tyler who took the certificate and surrendered it to the company, and in lieu thereof there was issued to Tyler a new certificate for said ten shares, and from this date (April 1, 1885) the stock stood in the name of defendant Tyler. It is claimed, and defendant so testifies, that he took the stock and held the same as collateral security for his claim against Parker, and for no other purpose. Under this state of facts defendant claims exemption from liability as a stockholder, and asserts the proposition that, "one holding shares of stock in this state as collateral security is not liable as a shareholder to the corporation or its creditors." In other words, although defendant Tyler may have the legal title to this stock, as shown by the certificate of stock and as appears on the books of the corporation, yet, if by a secret trust it should appear that the equitable title is in another, and that Tyler holds the shares of stock as security for the debt of that other person, the defendant is not liable as a stockholder to the creditors of the corporation. Except where modified by the statute, the rule is the reverse of defendant's contention. The courts have uniformly held, in the absence of an express statute to the contrary, that the liability to pay calls and to respond to creditors in the event of insolvency of the corporation, attaches to the holder of the legal title of the stock. "The courts," it is said, "will not look beyond the registered shareholder, nor inquire under what equity he holds." Thompson on Liability Stockholders, secs. 177–178 ; 2 Mor. Corp., secs. 852–853 ; *Pullman v. Upton,* 96 U. S. 330 ; *National Bank v. Case,* 99 U. S. 631 ; *In re Empire Bank,* 18 N. Y. 200 ; *Simmons v. Hill,* 96 Mo. 685. The reasons for this rule are well expressed in *Bank v. Case, supra,* page 631 : "One reason is that he (the stockholder) is estopped from denying his liability by voluntarily holding himself out to the public as the owner of the

stock, and his denial of ownership is inconsistent with the representations he has made; and another is that, by taking the legal title, he has released the former owner; and a third reason is that, after having taken the apparent ownership, and thus becoming entitled to receive dividends, vote at elections and enjoy all the privileges of ownership, it would be inequitable to allow him to refuse the responsibility of a stockholder.'' The two cases cited by defendant's counsel in support of their position (107 U. S. 20, and 92 Mo. 635) in no way conflict with the holding of the foregoing authorities, since in both instances the statute expressly provided that no person holding stock as collateral security should be subject to a liability for the company's debts; but that the persons pledging the stock should be considered as holding the same, and liable as stockholders to the creditors.

IV. Plaintiff's claim against the corporation is by virtue of a debt created and existing before the transfer of stock to defendant, and because thereof counsel contends that the statutory liability does not attach to the shareholder in respect of debts contracted before he became a member of the corporation. This position, too, is equally faulty. The owner of the stock, at the return of the execution against the corporation, is liable for all debts of the insolvent corporation, to the extent of his stock, regardless of the time such debts accrued. *Skrainka v. Allen*, 76 Mo. 384; *McClaren v. Franciscus*, 43 Mo. 452; *Miller v. Manion*, 50 Mo. 55.

V. What may be termed the home office of this Kansas corporation was at Cherokee county, in said state, although by the terms of its charter Wyandotte, Kansas, and Kansas City, Missouri, are named likewise as places for the transaction of its business. Plaintiff sued the company in Cherokee county, Kansas, recovered judgment there, and had execution issued, which was returned by the sheriff of said county; no property

found. Now the point is made, that this was not sufficient, under the laws of Kansas, to warrant this action against the defendant stockholder. We are of the opinion that this was all that is required to justify the demand on the defendant stockholder. The statute which we are called upon to enforce provides: "If any execution shall have been issued against the property or effects of a corporation * * * and there cannot be found any property whereon to levy such execution * * * then the plaintiff in the execution may proceed by action to charge the stockholders with the amount of this judgment." Laws of Kansas, 1881, sec. 32, art. 4, ch. 23. Here a judgment was rendered against the corporation at the place, or home, of its organization, and there an execution had been issued, and a return thereon by the proper officer of *nulla bona*. The words of the statute are: "If *any* execution shall have been issued" against the corporation and no property found, then the contingency has arisen whereby the stockholder may be charged. It is not surely required that the creditor, before resorting to the stockholder's liability, should take a roving execution and go about the country, wherever the corporation may have had business, and should, too, go into the courts of other states and secure judgment against the corporation with executions in all and returns of no property found. The stockholder contracted in view of this law, and he agreed that, if a judgment should be rendered against the corporation and an execution returned thereon of no property found, then he would pay the debt to the extent of this double liability.

VI. In the oral argument defendant's counsel made the claim that, when plaintiff Bagley sold his stock to the Chicago parties, he took from them an obligation to pay his claim so held against the corporation, and to secure performance of this obligation a lien or charge on the stock was retained, etc.; and, in view of

this contract and so-called pledge, it is insisted that, in equity and good conscience, plaintiff should first require said Chicago purchasers to pay his claim before resorting to any suit against defendant. As to this contention, we have to say, after a careful reading of the entire record, we do not find the facts as stated by defendant's counsel. The only obligation assumed by these Chicago purchasers, in their purchase of Bagley's stock, was that of other stockholders,—nothing further. After acquiring the Bagley shares (and perhaps others) and coming into the control and management of the company's affairs, these parties did, doubtless, assure Bagley that in a short time they (the corporation) would liquidate his claim against the company. There was no individual, personal undertaking on their part to pay Bagley's debt, and, hence, no pledge of stock to secure any such agreement.

We discover no reason for disturbing the judgment of the circuit court. The same is, therefore, affirmed. The other judges concur.