# PAULY *v.* STATE LOAN AND TRUST COMPANY.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 201. Argued January 29, 1897. — Decided March 1, 1897.

A creditor who receives from his debtor a transfer of shares in a national bank as security for his debt, and who surrenders the certificates to the bank, and takes out new ones in his own name, in which he is described as pledgee, and holds them afterwards in good faith as such pledgee and as collateral security for the payment of his debt, is not a shareholder, subject to the personal liability imposed upon shareholders by Rev. Stat. § 5151.

The previous cases relating to the liability of such shareholders examined and held to establish :

(1) That the real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder within the meaning of section 5151;

(2) That if the owner transfers his shares to another person as collateral security for a debt due to the latter from such owner, and if, by the direction or with the knowledge of the pledgee, the shares are placed on the books of the association in such way as to imply that the pledgee is the real owner, then the pledgee may be treated as a shareholder within the meaning of section 5151 of the Revised Statutes of the United States, and therefore liable upon the basis prescribed by that section for the contracts, debts and engagements of the association;

(3) That if the real owner of the shares transfers them to another person, or causes them to be placed on the books of the association in the name of another person, with the intent simply to evade the responsibility imposed by section 5151 on shareholders of national banking associations, such owner may be treated, for the purposes of that section, as a shareholder, and liable as therein prescribed;

(4) That if one receives shares of the stock of a national banking association as collateral security to him for a debt due from the owner, with power of attorney authorizing him to transfer the same on the books of the association, and being unwilling to incur the responsibilities of a shareholder as prescribed by the statute, causes the shares to be transferred on such books to another, under an agreement that they are to be held as security for the debt due from the real owner to his creditor — the latter acting in good faith and for the purpose only of securing the payment of that debt without incurring the responsibility of a shareholder — he, the creditor, will not, although the real owner may, be treated as a shareholder within the meaning of section 5151; and,

(5) That the pledgee of personal property occupies towards the pledgor somewhat of a fiduciary relation, by virtue of which, he being a trustee to sell, it becomes his duty to exercise his right of sale for the benefit of the pledgor.

THE case is stated in the opinion.

*Mr. Edward Winslow Paige* for plaintiff in error. *Mr. J. Wade McDonald* filed a brief for same.

*Mr. Edward W. Hutchins* and *Mr. Henry Wheeler*, by leave of court, filed a brief on behalf of Thomas P. Beal, receiver.

*Mr. W. P. Gardiner* for defendant in error. *Mr. W. A. Harris* was on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was an action to recover the amount of an assessment made on the shareholders of a national banking association in the hands of a receiver.

Is the defendant in error, the State Loan and Trust Company, a "shareholder" of the California National Bank of San Diego within the meaning of the statute relating to national

banking associations? That is the sole question presented by the pleadings.

By the Revised Statutes of the United States it is provided —

"SEC. 5139. The capital stock of each association shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association. Every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares; and no change shall be made in the articles of association by which the rights, remedies or security of the existing creditors of the association shall be impaired."

"SEC. 5151. The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. . . .

"SEC. 5152. Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such funds would be, if living and competent to act and hold the stock in his own name."

"SEC. 5210. The president and cashier of every national banking association shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the association, and the number of shares held by each, in the office where its business is transacted. Such list shall be subject to the inspection of all the shareholders and creditors of the association, and the officers authorized to assess taxes under state authority, during business hours of each day in which business may be legally transacted. A copy of such list, on the first Monday of July of each year,

verified by the oath of such president or cashier, shall be transmitted to the Comptroller of the Currency."

The Comptroller of the Currency appointed the plaintiff in error receiver of the California National Bank of San Diego, California. Rev. Stat. § 5234. He gave bond as required by law, and thereafter entered upon the discharge of the duties of his trust.

In virtue of the authority conferred upon him by law, the Comptroller made an assessment on the shareholders of the bank for five hundred thousand dollars, to be paid by them on or before the 18th day of June, 1892. The assessment was equally and ratably upon shareholders to the amount of one hundred per centum of the par value of the shares of the capital stock of the bank held and owned by them respectively at the time of its failure or suspension, and the receiver was required by an order of the Comptroller to institute suits to enforce against each shareholder his personal liability to that extent.

The receiver gave due notice of the assessment, in writing, to the State Loan and Trust Company — which is a corporation of California, having its principal place of business at the city of Los Angeles in that State — and made demand upon it therefor, but the company did not pay the same or any part thereof.

The facts upon which the claim against the defendant company is based are these: S. G. Havermale and J. W. Collins, owners and holders respectively of certificates numbered 286 and 297 issued to them for one hundred shares, each, of the capital stock of the California National Bank of San Diego, were indebted to the State Loan and Trust Company upon their promissory note for $12,500, besides interest. These certificates having been endorsed by the respective holders by writing their names across the back thereof, were transferred and delivered to the State Loan and Trust Company as collateral security for the payment of the above note, and, so endorsed, were, in ordinary course of mail, transmitted and surrendered to the California National Bank of San Diego. New certificates, numbered 308 and 309, respectively, were

thereupon issued to the State Loan and Trust Company of Los Angeles, as "pledgee," in lieu of certificates 286 and 297.

Each of the new certificates showed upon its face that it was issued to the "State Loan and Trust Company of Los Angeles, pledgee," and each purported to be for one hundred shares of the capital stock of the California National Bank of San Diego.

The defendant, after receiving certificates 308 and 309, held them "as pledgee, and as collateral security for the payment of said note, and for the unpaid balance of the debt thereby represented."

Otherwise than as just stated, the State Loan and Trust Company of Los Angeles never had owned or held any shares of the capital stock of the California National Bank of San Diego, and never was entitled to hold the usual stock certificate as such shareholder to the amount of two hundred shares or to any other amount.

Except as pledgee of the stock represented by certificates 308 and 309, respectively, the name of the State Loan and Trust Company never appeared upon or in the stock or other corporate books of the California National Bank of San Diego as a shareholder. The entries in the books of the bank showed that the new certificates were issued to the State Loan and Trust Company as pledgee, and not otherwise.

A jury having been waived by the parties in writing, the case was tried in the Circuit Court, and judgment was rendered for the defendant. 56 Fed. Rep. 430. Upon appeal to the Circuit Court of Appeals that judgment was affirmed. 15 U. S. App. 259.

Is one who does not appear upon the official list of the names and residences of the shareholders of a national banking association otherwise than as "pledgee" of a given number of shares of the capital stock of such association — nothing else appearing — liable as a "shareholder" of such association under section 5151 of the Revised Statutes of the United States declaring that "the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts

and engagements of such association, to the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares"?

As both sides contend that their respective positions are in harmony with decisions heretofore rendered in this court, it will be necessary to refer to some of the cases cited by counsel.

In *Pullman* v. *Upton,* 96 U. S. 328, 330, which was an action by the assignee in bankruptcy of an insurance company to compel a holder of shares of its stock to pay the balance due thereon, the court said: "The only question remaining is, whether an assignee of corporate stock, who has caused it to be transferred to himself on the books of the company, and holds it as collateral security for a debt due from his assignor, is liable for unpaid balances thereon to the company, or to the creditors of the company, after it has become bankrupt. That the original holders and the transferees of the stock are thus liable we held in *Upton* v. *Tribilcock,* 91 U. S. 45; *Sanger* v. *Upton,* 91 U. S. 56; and *Webster* v. *Upton,* 91 U. S. 65; and the reasons that controlled our judgment in those cases are of equal force in the present. The creditors of the bankrupt company are entitled to the whole capital of the bankrupt, as a fund for the payment of the debts due them. This they cannot have, if the transferee of the shares is not responsible for whatever remains unpaid upon his shares; for by the transfer on the books of the corporation the former owner is discharged. It makes no difference that the legal owner — that is, the one in whose name the stock stands on the books of the corporation — is in fact only, as between himself and his debtor, a holder for security of the debt, or even that he has no beneficial interest therein."

In *National Bank* v. *Case,* 99 U. S. 628, 631, 632 — which was an action to make the Germania National Bank of New Orleans liable as a shareholder of another national bank that had become insolvent — it appeared that Phelps, McCullough & Co. borrowed money from the defendant bank, and to secure the payment of the loan, evidenced by note, pledged one hundred shares of the stock of the Crescent City National Bank, with power on non-payment of the sum borrowed to

dispose of the stock for cash without recourse to legal proceedings, and to that end to make transfers on the books of the latter corporation.. The note not having been paid, the stock was transferred on the books of the Crescent City National Bank to the Germania National Bank. The latter subsequently caused the stock to be transferred, on the books of the former, to one of its clerks, who acquired no beneficial interest in it, and between whom and the officers of his bank it was understood that he would retransfer the stock at their request. This court, observing that notwithstanding the transfer to the clerk the stock remained subject to the bank's control, and that the transfer to him was made to evade the liability of the true owners, said: "It is thoroughly established that one to whom stock has been transferred in pledge or as collateral security for money loaned, and who appears on the books of the corporation as the owner of the stock, is liable as a stockholder for the benefit of creditors. We so held in *Pullman* v. *Upton*, 96 U. S. 328; and like decisions abound in the English courts, and in numerous American cases, to some of which we refer: *Adderly* v. *Storm*, 6 Hill, 624; *Roosevelt* v. *Brown*, 11 N. Y. 148; *Holyoke Bank* v. *Burnham*, 11 Cush. 183; *Magruder* v. *Colston*, 44 Maryland, 349; *Crease* v. *Babcock*, 10 Met. (Mass.) 525; *Wheelock* v. *Kost*, 77 Illinois, 296; *Empire City Bank*, 18 N. Y. 199; *Hale* v. *Walker*, 31 Iowa, 344. For this several reasons are given. One is, that he is estopped from denying his liability by voluntarily holding himself out to the public as the owner of the stock, and his denial of ownership is inconsistent with the representations he has made; another is, that by taking the legal title he has released the former owner; and a third is, that after having taken the apparent ownership and thus become entitled to receive dividends, vote at elections, and enjoy all the privileges of ownership, it would be inequitable to allow him to refuse the responsibilities of a stockholder. . . . When, therefore, the stock was transferred to the Germania Bank, though it continued to be held merely as a collateral security, the bank became subject to the liabilities of a stockholder, and the liability accrued the instant the

transfer was made." After referring to some of the English cases, the court proceeds: "The American doctrine is even more stringent. Mr. Thompson states it thus, and he is supported by the adjudicated cases: 'A transfer of shares in a failing corporation, made by the transferrer with the purpose of escaping his liability as a shareholder, to a person who, from any cause, is incapable of responding in respect of such liability, is void as to the creditors of the company and as to other shareholders, although as between the transferrer and the transferee it was out and out.' *Nathan* v. *Whitlock*, 9 Paige, 152; *McClaren* v. *Franciscus*, 43 Missouri, 452; *Marcy* v. *Clark*, 17 Mass. 329; *Johnson* v. *Laflin*, by Dillon, J., 6 Cent. Law Jour. 131; 5 Dillon, 65. The case in hand does not need the application of so rigorous a doctrine. While the evidence establishes that the Crescent City was in a failing condition when the transfer to Waldo was made, and leaves no reasonable doubt that the Germania Bank knew it and made the transfer to escape responsibility, it establishes much more. The transfer was not an out and out transfer. The stock remained the property of the transferrer. Waldo was bound to retransfer it when requested, and all the privileges and possible benefits of ownership continued to belong to the bank. No case holds that such a transfer relieves the transferrer from his liability as a stockholder."

It may be here observed that in *Pullman* v. *Upton* the person who sought to escape liability as a shareholder appeared on the books of the insolvent insurance company *as the owner* of the stock; and that in *National Bank* v. *Case* the Germania National Bank, after the original transfer under the power of attorney executed by its debtor, appeared on the books of the other bank *as the owner* of the stock; and that the liability arising therefrom could not be defeated or avoided by a transfer, however regular in form, to another who acquired no beneficial interest in it, and was to hold the stock simply for its benefit. Nothing appeared upon the stock list, in either case, to indicate that the person or corporation who appeared on such list as a shareholder was not, in fact, the actual owner.

In *Bowden* v. *Johnson*, 107 U. S. 251, 261, which involved the liability as a shareholder of a national bank of one who became the purchaser and owner of some of its shares, and who, in apprehension of the bank's failure, and in order to escape liability, transferred his stock to an irresponsible person, the court said: "The answer sets forth that Johnson became the purchaser and owner of the one hundred and thirty shares in 1869. As such shareholder, he became subject to the individual liability prescribed by the statute. This liability attached to him until, without fraud as against the creditors of the bank, for whose protection the liability was imposed, he should relieve himself from it. He could do so by a *bona fide* transfer of the stock. But where the transferrer, possessed of information showing that there is good ground to apprehend the failure of the bank, colludes and combines, as in this case, with an irresponsible transferee, with the design of substituting the latter in his place, and of thus leaving no one with any liability to respond for the individual liability imposed by the statute, in respect of the shares of stock transferred, the transaction will be decreed to be a fraud on the creditors, and he will be held to the same liability to the creditors as before the transfer. He will be still regarded as a shareholder *quoad* the creditors, although he may be able to show that there was a full or partial consideration for the transfer, as between him and the transferee. The appellees contend that the statute does not admit of such a rule, because it declares that every person becoming a shareholder by transfer succeeds to all the liabilities of the prior holder, and that, therefore, the liabilities of the prior holder, as a stockholder, are extinguished by the transfer. But it was held by this court in *National Bank* v. *Case*, 99 U. S. 628, that a transfer on the books of the bank is not in all cases enough to extinguish liability. The court, in that case, defined as one limit of the right to transfer, that the transfer must be out and out, or one really transferring the ownership as between the parties to it. But there is nothing in the statute excluding, as another limit, that the transfer must not be to a person known to be irresponsible, and

collusively made, with the intent of escaping liability, and defeating the rights given by statute to creditors."

But the case to which our attention has been particularly called is *Anderson v. Philadelphia Warehouse Company*, 111 U. S. 479, 483–485, in which the question was as to the liability of the Philadelphia Warehouse Company as a shareholder of a national bank that had become insolvent. The facts in that case were these: Blumer & Co. (the senior member of that firm being president of the bank) arranged with the Warehouse Company for a loan or banker's credit, to be secured by collaterals. Kern, a member of the firm, transferred 450 shares of the stock of the bank, standing in his name on the books of the bank, and caused a new certificate to be issued in the name of Henry, as president of the Warehouse Company, and it was taken or sent to that company as further security for the credit extended to Blumer & Co. The fact of this transfer of stock to the name of Henry, as president, having come to the knowledge of the directors and executive committee of the Warehouse Company, they caused a transfer to be made on the books of the bank to one McCloskey, an irresponsible person and a porter in its employment, and a new certificate to be issued in his name, because they deemed it inadvisable to have the stock stand in the name of the company's president, and thus incur the liability imposed upon shareholders of national banks. McCloskey never had possession of the certificate, and gave to the Warehouse Company an irrevocable power of attorney for the sale and transfer of stock. Upon McCloskey's death the stock was transferred on the books of the bank to Ferris, also an irresponsible person and an employé of the Warehouse Company. A new certificate was issued to him, and delivered to the company, Ferris endorsing thereon an irrevocable power of attorney for its transfer. When the bank failed, the stock stood in the name of Ferris, the Warehouse Company holding the certificate. That company never received any dividends on the stock, and never acted as a shareholder, but held the stock as security for the debt due it.

This court in that case recognized it to be well settled that

one who allows himself to appear on the books of a national bank as an "owner" of its stock is liable to creditors as a shareholder, whether he be, in fact, the absolute owner or only a pledgee, and that, if a registered owner, acting in bad faith, transfers his stock in a failing bank to an irresponsible person, for the purpose of escaping liability, or if his transfer is colorable only, the transaction is void as to creditors — citing *National Bank* v. *Case*, 99 U. S. 628; *Bowden* v. *Johnson*, 107 U. S. 251. It was further said to be beyond question that the beneficial owner of stock registered in the name of an irresponsible person may, under some circumstances, be liable to creditors as the real shareholder; "but," the court observed, "it has never, to our knowledge, been held that a mere pledgee of stock is chargeable where he is not registered *as owner.*"

It appeared, according to the opinion in that case, that there was no evidence of actual fraud or bad faith; that the Warehouse Company never was the owner of the stock in question, and never held itself out as such; that the transfer of Kern and Blumer & Co. was only by way of pledge, and the company was bound to return the stock whenever the debt, for which it was held, was paid; that the company never consented to a transfer of the stock to its name on the books, or to that of its president, and that for seven years before the failure of the bank, and at least five years before its embarrassments were known to the company or the public, the stock, with the assent of Kern, Blumer & Co. and the officers of the bank, stood in the name of McCloskey or Ferris; that during all that time neither the registered holders nor the Warehouse Company claimed dividends or in any way acted as shareholders; that either Kern or Blumer & Co. took the dividends as they were paid, and to all intents and purposes controlled the stock; that there was no concealment on the part of the Warehouse Company, and no effort to deceive; that it had possession of the certificates representing the stock, with full power to control them for all the purposes of its security, but never was or pretended to be anything else than a mere pledgee; that those who examined the list of shareholders

would have found the name of McCloskey or of Ferris as the registered holder of four hundred and fifty shares; there was nothing on the books of the bank to connect them, or either of them, with the Warehouse Company, and, therefore, no credit could have been given on account of the apparent liability of the company as a shareholder.

"If," the court said, "inquiries had been made and all the facts ascertained, it would have been found that either Kern or Blumer & Co. were always the real owners of the stock, and that it had been placed in the name of the persons who appeared on the registry, not to shield any owner from liability, but to protect the title of the company as pledgee. Blumer & Co. and the bank were fully advised who McCloskey was, and of his probable responsibility, when they allowed the transfer to be made to him, and they undoubtedly knew who Ferris was when the stock was put in his name after McCloskey's death. The avowed purpose of both transfers was to give the company the control of the stock for the purposes of its security, without making it liable as a registered shareholder. To our minds there was neither fraud nor illegality in this. The company perfected its security as pledgee, without making itself liable as an apparent owner. Kern or Blumer & Co. still remained the owners of the stock, though registered in the name of others, and pledged as collateral security for their debt. They consented to the transfer, not to escape liability as shareholders, but to save the company from a liability it was unwilling to assume, and at the same time to perfect the security it required for the credit to be given. As between Blumer & Co. and the Warehouse Company, Blumer & Co. or Kern were the owners of the stock and the company the pledgee. As between the company and the bank, or its creditors, the company was a pledgee of the stock and liable only as such. The creditors were put in no worse position by the transfers that were made than they would have been if the stock had remained in the name of Kern or Blumer & Co., who were always the real owners. To our minds the fact that the stock stood registered in the name of Henry, President, from December 27th to January

10th, is, under the circumstances of this case, of no importance. The Warehouse Company promptly declined to allow itself to stand as a registered shareholder, because it was unwilling to incur the liability such a registry would impose. It asked that the transfer might be made to McCloskey. To this the owners of the stock and the bank assented, and from that time the case stood precisely as it would if the transfer had originally been made to McCloskey instead of Henry, President, or if Henry had retransferred to Kern or Blumer & Co., and they had at the request of the company made another transfer to McCloskey. The security of the Warehouse Company was perfected without imposing on the company a shareholder's liability. All this was done in good faith, when the bank was in good credit and paying large dividends, and years before its failure or even its embarrassment. So far as the company was concerned, the transfer was not made to escape an impending calamity, but to avoid incurring a liability it was unwilling to assume, and which it was at perfect liberty to shun."

Another of the cases referred to, although it did not relate to the liability of the shareholders of national banking associations, is *Easton* v. *German-American Bank*, 127 U. S. 532, 536–537, in which it was said: "Where personal property is pledged, the pledgee acquires the legal title and the possession. In some cases, it is true, it may remain in the apparent possession of the pledgor, but, if so, it can be only where the pledgor holds as agent of the pledgee. By virtue of the pledge, the pledgee has the right by law, on default of the pledgor, to sell the property pledged in satisfaction of the pledgor's obligation. As in that transaction the pledgee is the vendor, he cannot also be the vendee. In reference to the pledge and to the pledgor, he occupies a fiduciary relation, by virtue of which it becomes his duty to exercise his right of sale for the benefit of the pledgor. H      in the position of a trustee to sell, and is by a familiar maxim of equity forbidden to purchase for his own use at his own sale. The same principle applies with a like result where real estate is conveyed by a debtor directly to a creditor as security for the payment of

an obligation, with a power to sell in case of default. There the creditor is also a trustee to sell, and cannot purchase the property at his own sale for his own use."

It is apparent that the precise question before us was not involved in any of the above cases, although the principles announced in them bear upon the issue here presented.

From those cases the following rules relating to the liability of shareholders of national banking associations may be deduced:

That the real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder within the meaning of section 5151;

That if the owner transfers his shares to another person as collateral security for a debt due to the latter from such owner, and if, by the direction or with the knowledge of the pledgee, the shares are placed on the books of the association in such way as to imply that the pledgee is the real owner, then the pledgee may be treated as a shareholder within the meaning of section 5151 of the Revised Statutes of the United States, and therefore liable upon the basis prescribed by that section for the contracts, debts and engagements of the association;

That if the real owner of the shares transfers them to another person, or causes them to be placed on the books of the association in the name of another person, with the intent simply to evade the responsibility imposed by section 5151 on shareholders of national banking associations, such owner may be treated, for the purposes of that section, as a shareholder, and liable as therein prescribed;

That if one receives shares of the stock of a national banking association as collateral security to him for a debt due from the owner, with power of attorney authorizing him to transfer the same on the books of the association, and being unwilling to incur the responsibilities of a shareholder as prescribed by the statute, causes the shares to be transferred on such books to another, under an agreement that they are to be held as security for the debt due from the real owner to his creditor — the latter acting in good faith and for the pur-

pose only of securing the payment of that debt without incurring the responsibility of a shareholder — he, the creditor, will not, although the real owner may, be treated as a shareholder within the meaning of section 5151; and,

That the pledgee of personal property occupies towards the pledgor somewhat of a fiduciary relation, by virtue of which, he being a trustee to sell, it becomes his duty to exercise his right of sale for the benefit of the pledgor.

The present case differs from those cited in the important particular that the stock list of the bank gave information to all who examined it that the State Loan and Trust Company was not the real or absolute owner of the shares in question, but held them only as "pledgee"; that there was no "out and out" transfer of the stock, whereby the transferrer, as between him and the transferee, parted with his interest; and that the real ownership remained with the pledgor, the pledgee acquiring only a lien upon the stock to secure its debt.

In the case of *Finn* v. *Brown*, 142 U. S. 56, 71, the question was as to the liability as a shareholder of a director of a bank who appeared upon its books to be the owner of a given number of shares of stock. The court said: "It appears by the evidence that the bank had a stock register and a book of certificates of shares, and that a list of stockholders and of transfers was kept in one of its books, although it had no regular stock book. The jury would not have been justified in holding the defendant not liable for the assessment on the 50 shares or for the $1750 dividend. The dividend was undoubtedly fraudulent, and the records of the bank were falsified in showing that the defendant was present at the meeting at which the dividend was declared. It was declared, probably, by De Walt himself alone, for the purpose of showing a fictitious prosperity and of concealing from the public and the directors the real condition of the affairs of the bank. The defendant had had no previous connection with a banking business, and was deceived by De Walt. But all this cannot relieve him from liability. The statutes of the United States are explicit as to the necessary ownership of stock in a national bank by a director thereof, and as to his taking

an oath to that effect, and as to the keeping by the cashier of a correct list of the shareholders and of the number of shares each of them holds; and it cannot be held, with any safety to the interests of the public and those who deal with national banks, that a director, who also is vice-president and acts as cashier, can shield himself from liability by alleging ignorance of what appears by the books of which he has charge."

Does the statute, in letter or spirit, require that the word "pledgee," appended to the name of the party to whom certificates 308 and 309 were issued, should be entirely ignored? Is the holder of such certificates in no better condition, in respect of liability as a shareholder, than if such list had imported absolute ownership in the transferee? The statute requires that there shall be kept, at all times, in the office where the business of a national banking association is transacted, and subject, during business hours, to the inspection of shareholders and creditors of the association, as well as of officers authorized to assess taxes under state authority, a full and correct list of the names and residences of all the shareholders of the association, and of the number of shares held by each. Section 5210. Manifestly, one, if not the principal, object of this requirement, was to give creditors of the association, as well as state authorities, information as to the shareholders upon whom, if the association becomes insolvent, will rest the individual liability for its contracts, debts and engagements. Referring to this provision this court said, in *Waite v. Dowley*, 94 U. S. 527, 534, that the act of Congress "was merely designed to furnish to the public dealing with the bank a knowledge of the names of its corporators, and to what extent they might be relied on as giving safety to dealing with the bank." And, let it be observed, the liability upon shareholders is to the extent of the amount of their stock at the par value thereof, "in addition to the amount *invested in* such shares." The word "invested" plainly has reference to those who originally or by subsequent purchase become the real owners of the stock, and cannot refer to those who never invested money in the shares, but only received the certificates of stock, or it may be the legal title thereto, as

collateral security for debts .or obligations already or to be contracted.

It is true that one who does not in fact invest his money in such shares, but who, although receiving them simply as collateral security for debts or obligations, holds himself out on the books of the association as true owner, may be treated as the owner, and therefore liable to assessment, when the association becomes insolvent and goes into the hands of a receiver. But this is upon the ground that by allowing his name to appear upon the stock list as owner he represents that he is such owner; and he will not be permitted, after the bank fails and when an assessment is made, to assume any other position as against creditors. If, as between creditors and the person assessed, the latter is not held bound by that representation, the list of shareholders required to be kept for the inspection of creditors and others would lose most of its value.

But this rule can have no just application when, as in this case, the creditors were informed by that list that the party to whom certificates were issued was not in fact, and did not assume to be, the owner of the shares represented by them; but was and assumed to be only a pledgee having no general property in the thing pledged, but only a right, upon default, to sell in satisfaction of the pledgor's obligation. Upon inspecting the stock registry or any list of shareholders or of transfers kept by the bank, creditors will know that they cannot regard a pledgee as the actual owner. If the certificates in question had been extended so as to give the name of the pledgor, it would not be supposed that, upon any principle of justice, or upon grounds of public policy, the pledgee could have been held to the liability imposed by section 5151 upon shareholders. But the liability being purely statutory, the result ought not to be different because of the circumstance that the name of the pledgor was omitted from the certificates, since that which did appear in them was sufficient to inform creditors that the State Loan and Trust Company was only a pledgee, and by slight diligence they could have ascertained the name of the pledgor.

It may be suggested that if the pledgee is not held liable

as a shareholder, in respect of the shares of stock standing in
its name as pledgee, then no one is liable to assessment as the
owner of such stock.    But it is a mistake to suppose that
Havermale and Collins ceased to be shareholders for the pur-
poses of the liability imposed by section 5151.    They remained,
notwithstanding the pledge, the actual owners of the stock,
a right which they would have promptly asserted if the
pledgee had assumed to be the owner and had sold the stock,
appropriating to itself all the proceeds of sale.    The object of
the statute is not to be defeated by the mere forms of trans-
actions between shareholders and their creditors.    The courts
will look at the relations of parties as they actually are, or as,
by reason of their conduct, they must be assumed to be for
the protection of creditors.    Congress did not say that those
only should be regarded as shareholders, liable for the con-
tracts, debts and engagements of the banking association,
whose names appear on the stock list distinctly as share-
holders.    A mistake or error in keeping the official list of
shareholders would not prevent creditors from holding liable
all who were, in fact, the real owners of the stock, and as
such had invested money in the shares of the association.
As already indicated, those may be treated as shareholders,
within the meaning of section 5151, who are the real owners
of the stock, or who hold themselves out, or allow themselves
to be held out, as owners in such way and under such circum-
stances as, upon principles of fair dealing, will estop them,
as against creditors, from claiming that they were not, in fact,
owners.

It was under this construction of the statute that one was
held liable as a shareholder who, in the belief that the bank
was about to fail, and whose liability as a shareholder had
equitably attached, collusively transferred his stock to an
irresponsible person, in order to escape responsibility as a
shareholder.    This was held to be a fraud upon the statute,
and the transferrer was held, as between him and the cred-
itors, as the real owner of the stock, and, therefore, liable,
although the transferee appeared on the stock registry as the
shareholder.    *Bowden* v. *Johnson,* above cited.    Under the

same interpretation a corporation was treated as a shareholder who held shares of stock only as collateral security, but who allowed its name to appear and remain on the stock registry of the insolvent national bank association *as owner*, without anything indicating that it held such stock as collateral security. *National Bank* v. *Case*, above cited. So, in another case, it was held that the transferrers "remained the owners of the stock, though registered in the name of others, and pledged as collateral security for their debt." *Anderson* v. *Philadelphia Warehouse Co.*, above cited.

Our conclusion is that the defendant in error cannot be regarded otherwise than as a pledgee of the stock in question, is not a shareholder within the meaning of section 5151 of the Revised Statutes, and is not, therefore, subject to the liability imposed upon the shareholders of national banking associations by that section.

This view of the case makes it unnecessary to consider whether the State Loan and Trust Company, being a pledgee of the stock, was a "trustee" within the meaning of section 5152, providing that "persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liabilities as stockholders."

The judgment is

*Affirmed.*