JOHN E. HILL, RECEIVER OF THE LINCOLN SAVINGS BANK AND SAFE DEPOSIT COMPANY, ET AL. V. STEPHEN A. D. SHILLING, RECEIVER OF THE MERCHANTS BANK.

FILED MAY 20, 1903.    No. 12,821.

1. **Savings Bank: POWERS: ACQUIRING STOCK.** A savings bank organized under the laws of this state may acquire title to shares of stock of another corporation, where such stock is taken in compromise or discharge of the indebtedness of an insolvent debtor, and where no circumstances casting suspicion on the transaction are shown, but it fairly appears that the directors of the bank acted in good faith and in the belief that the acceptance of the stock was for the best interest of the bank.

2. ———: LIABILITY. After acquiring the stock the savings bank becomes subject to any liability thereon the same as other stockholders.

ERROR to the district court for Lancaster county: LINCOLN FROST, DISTRICT JUDGE. *Affirmed.*

*L. C. Burr* and *A. S. Tibbetts,* for plaintiffs in error.

*Allen W. Field* and *Guy A. Andrews, contra.*

DUFFIE, C.

The Merchants Bank of Lincoln became insolvent, and was placed in the hands of a receiver. After exhausting the assets of the bank, the claims allowed against the same being still unpaid, the court directed the receiver to institute suit against its several stockholders to enforce their liability upon their respective shares of stock. The Lincoln Savings Bank and Safe Deposit Company is also in the hands of a receiver, and among the assets reported by the receiver are thirty shares of one hundred dollars each of the stock of the Merchants Bank. Shilling, the receiver of the Merchants Bank, in compliance with the order of the court, commenced an action against John E. Hill, receiver of the Lincoln Savings Bank and Safe Deposit Company, and other stockholders of the Merchants Bank, to recover upon the statutory liability of said stockholders, and obtained judgment against the Lincoln Savings Bank and Safe Deposit Company, in the sum of $3,575.90. The defendant bank has brought the record here for review. The parties stipulated the evidence upon which the case was tried, and the circumstances under which the savings bank became possessed of the stock are agreed upon as follows:

"That on the 27th day of September, 1892, one D. L. Brace was the owner of thirty shares of stock in the plaintiff bank, and on said day he borrowed and the defendant bank loaned to him the sum of $2,500 evidenced by a note of that date due January 1, 1893; that said note was payable to the order of the defendant bank and signed by D. L. Brace, the bank taking said shares of stock as a collateral to the said note. That on the 23d day of February,

1893, by mutual agreement between said D. L. Brace and the defendant bank, the said thirty shares of stock belonging to said D. L. Brace were taken up and canceled by said plaintiff bank and the thirty shares of stock involved in this action were issued and delivered to Mr. Miller, the secretary of the bank as hereinbefore agreed, with the mutual understanding between said D. L. Brace and the said defendant bank, that at any time when he could pay said $2,500 note and interest thereon, he could take up, and the said bank would surrender to said Brace said thirty shares of stock; that the court shall take and accept of these facts and consider the same as evidence in the case. It being further agreed that D. L. Brace above named was on February 23, 1893, and ever since has been insolvent, and that the stock referred to was listed by the receiver, J. E. Hill, as the property of said Lincoln Savings Bank and that no dividends have been paid upon said stock since February 23, 1893."

Article 3 of the charter of the savings bank is as follows:

"The business to be transacted by said corporation, is receiving money on deposit, paying interest thereon, investing the money of said corporation in bonds, notes, mortgages and other securities; the renting of vault boxes, and receiving and keeping in the vaults of said corporation, papers, securities, and such other valuables as may be deposited with said corporation for safe keeping; the purchasing or renting of such real estate as may be necessary for a place or places of doing and transacting the business of said corporation, and purchasing such real estate as may be necessary to secure debts due or to become due said corporation, and selling, leasing, mortgaging or otherwise disposing of real estate so acquired."

The plaintiff in error insists that, by its charter, the bank was restricted in its business to receiving money on deposit, paying interest thereon, investing its money in bonds, notes, mortgages and other securities, and that it had no authority or power to invest in stocks or to become a stockholder in another corporation and thus endanger or

place in jeopardy the savings of its depositors.  *Bank of Commerce v. Hart,* 37 Neb. 197, is relied on as an authority for this position.  It was there held that a banking corporation organized under the laws of this state had no power to become a stockholder in an insurance company.  The opinion shows that Hart was indebted to the bank in the sum of $20,000 and, when sued upon his note, claimed to have made payment of something over $14,000 by a sale to the bank of certain shares of an insurance company, through one Johnston, its cashier.  Accepting the theory of the transaction as given by Johnston as true, and that a sale of the stock had been made, the question fairly arose whether a banking corporation, organized under the laws of this state, could make a direct purchase of the shares of stock of another corporation, and this question, follow- ing the great weight of authority, was determined in the negative.  The case at bar, however, presents a very differ- ent question, namely:  Whether a bank, in order to secure a debt due from an insolvent debtor, may take from him shares of stock in another corporation in settlement of his liability.  The general rule undoubtedly is that this may be done.  In *Bank of Commerce v. Hart, supra,* it is said:

"It is doubtless true that the bank could legally take the stock of another corporation as security for a debt previ- ously contracted.  Possibly it might make a loan on the strength of the stock as security at the time.  On this point the authorities are not in harmony, and as it is not material here we do not decide it.  An emergency might arise when a bank's board of directors would be justified in taking the stock of another corporation in settlement, adjustment, or compromise of a doubtful claim or debt, acting in the honest belief that only by so doing could a serious loss to the bank be averted.  None of these reasons, however, existed in the case at bar, or, if they did, the record before us does not disclose them."

Whether the savings bank might take this stock as col- lateral to the loan made to Brace is not we think material to be determined.  At the time the loan was made no

statute of the state existed directing what investment such
bank should make of its funds or what security should be
taken on loans made.   Our present statute, section 31,
chapter 8, Compiled Statutes, 1901 (Annotated Statutes,
3731), directing the investment of the funds of a savings
bank in bonds of the United States or of any state in the
United States, or in the public debt or bonds of any city,
county, township, village or school district of any state of
the United States, which shall have been authorized by the
legislature of the state, or that such funds be loaned on
negotiable paper secured by any of the above mentioned
classes of security or upon notes or bonds secured by mort-
gage lien upon unencumbered real estate, etc., was not en-
acted until 1895, three years or more after this loan to
Brace was made; and the fact that the legislature under-
took to direct what security should be taken upon loans
made by a savings bank in this act, leads us to believe that
prior to its enactment the general understanding was that
collateral other than that named in the statute might be
accepted by such banks as security for money loaned to its
customers.   However this may be, the stipulation of facts
entered into between the parties is clearly to the effect
that, at the time the savings bank accepted this stock in
payment of the loan, Brace was insolvent, and in the ab-
sence of any showing that the stock was worthless the pre-
sumption must obtain that the directors of the bank acted
honestly in the transaction and believed that the stock
was valuable, and that they were serving the interests of
the bank in accepting it in discharge of this claim against
an insolvent debtor.   There is no intimation that this stock
was taken with any intention upon the part of the savings
bank to obtain a controlling interest in the plaintiff bank,
or that it was contemplated to speculate in this stock.
Upon its face the transaction bears the stamp of an honest
endeavor by the directors of the bank to secure a demand
due the corporation from an insolvent debtor, and the
authorities are numerous that such a transaction will be
upheld.   *Latimer & Inglis v. Citizens State Bank,* 102 Ia.

162, 71 N. W. 225; *Tourtelot v. Whithed,* 9 N. Dak. 467, 84 N. W. 8; *First Nat. Bank of Charlotte v. National Exchange Bank of Baltimore,* 92 U. S. 122; *Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co.,* 127 N. Y. 252; 4 Thompson, Corporations, sec. 5719; 2 Morawetz, Private Corporations (2d ed.), secs. 648, 649.

The savings bank having become the owner of the stock, was liable thereon as any other stockholder. *National Bank v. Case,* 99 U. S. 628.

We recommend the affirmance of the judgment.

POUND and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.