## TODD et al. v. RUSSELL et al.

District Court, S. D. New York.

Sept. 30, 1937.

Mack, Taylor, Spiegelberg & McCauley, of New York City (George A. Spiegelberg and Harry W. Mack, both of New York City, of counsel), for plaintiffs.

Benjamin G. Myron, of New York City, for defendant Samuel A. Pleasants.

Samuel A. Pleasants, of New York City, for all other defendants.

MANDELBAUM, District Judge.

This is an action to collect the statutory liability of the defendants as stockholders as provided by Federal Farm Loan Act, § 16, 12 U.S.C.A. § 812.

The plaintiffs, doing business as J. S. Todd & Co. are the holders of $10,000 principal amount of bonds of the Ohio Joint Stock Land Bank of Cincinnati, Ohio. These bonds were acquired in 1928 after the bank had been placed in receivership. At the time of the failure of the bank, defendants Russell, Miller and Carcy held

200 shares of stock of the par value of $20,-000, defendant Taylor held 1,745 shares of the par value of $174,500, and defendant Pleasants held 112½ shares of the par value of $11,250, *all registered in their respective names.* These defendants have not paid their alleged statutory liability as stockholders after assessment, and this action is consequently brought by the plaintiffs on their own behalf, as well as on behalf of all creditors, for the collection of same.

The action is predicated upon section 812 of title 12, U.S.C.A., which reads as follows: "Individual liability of shareholders. Shareholders of every joint-stock land bank organized under this chapter shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock *owned by them* at the par value thereof, in addition to the amount paid in and represented by their shares." (Italics by the court.)

During the course of this litigation, several motions were made by the litigants of which brief mention will be made. On July 25, 1932, Judge William Bondy, held that, this being a representative action, the same was properly in equity.[1] On November 2, 1932, Judge Robert P. Patterson ruled upon some of the affirmative defenses pleaded by the defendants. 1 F.Supp. 788. Finally, on December 30, 1935, Judge John C. Knox, in a comprehensive opinion, after a trial on a special issue, overruled the defense of laches as set up in the answer of the respective defendants. 20 F.Supp. 930.

The pertinent defenses interposed by the defendants upon which this court is now called upon to pass may be said to be: (1) That the defendants are not owners (of the stock) and are therefore not liable under the act; (2) that the plaintiffs are not entitled on equitable grounds to assert an estoppel against the denial of such ownership; (3) that the plaintiff is not a proper party plaintiff; and (4) that there is no ground for equitable jurisdiction, since no accounting is necessary for the distribution among the plaintiffs or to determine the amount of the assessment required.

 Much discussion is not needed in disposing of defenses 3 and 4. In addition to the fact that Judge Bondy's decision that the instant suit is cognizable in equity

and which ruling is the law of the case, I believe that the cases of Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160; Brusselback v. Cago Corporation (C.C.A.) 85 F.(2d) 20, certiorari denied 299 U.S. 586, 57 S.Ct. 111, 81 L.Ed. 432, and Brusselback v. Arnovitz (C.C.A.) 87 F.2d 761, rehearing denied March 9, 1937, are a complete answer to the defendants' contentions. I hold therefore these defenses to be insufficient in law, and they are accordingly dismissed.

Defenses numbered 1 and 2 present more serious questions. For the purposes of clarity, the remaining issues may be narrowed to whether the decisions interpreting stockholders' liability arising out of the failure of a national bank are applicable to stockholders' liability arising out of the failure of a joint stock land bank. If they do, then the plaintiffs must succeed. If they do not, the defendants must be declared free from any legal responsibility.

The defendants have meticulously analyzed for the court the pertinent provisions of the National Banking Act (1864, 13 Stat. 99), Federal Reserve Act (1913, 38 Stat. 251), and Farm Loan Act (1916) in their attempt to show, *that* not only by difference in language, the method of doing business, as well as the organization of Farm Loan Associations, *that* it was the congressional intention to confine statutory liability to the *beneficial owners of the stock,* rather than record holders thereof.

They say, that the change in the language used in section 812 of title 12, U.S.C.A. ("The extent of the amount of the stock *owned by them"*), lends support to their contention that beneficial rather than the record ownership is intended before statutory liability may be imposed.

The provision of the National Banking Act (and the decisions thereunder, infra), upon which the plaintiffs solely rely, reads as follows (section 63 of title 12, U.S.C.A.): "Individual liability of shareholders. The shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, to the extent *of the amount of their stock* therein, at the par value thereof, in addition to the amount invested in such shares." (Italics by the court.)

The plaintiffs urge that the above-quoted section 63 is identical with section 812

---

[1] No opinion for publication.

(joint stock land banks) except that, in the case of national banks, section 63 imposes the liability *on the shareholders to the extent of the amount of their stock therein,* while section 812 imposes the liability *on shareholders to the extent of the amount of stock owned by them.* In short, they say "their stock" and "The amount of the stock owned by them" mean exactly the same thing.

The evidence and exhibits reveal that the defendant Taylor is the nominal holder of certain shares held by C. G. Taylor & Co., of which company he was president. Defendants Russell, Miller and Carey are the registered holders of certain shares in behalf of their client, Grafton W. Minot. Defendant Pleasants is the pledgee of certain shares as security for an advance made by him to the Joint Stock Bond & Share Company, Inc., an affiliate of C. G. Taylor & Co.

It is no longer open to question that the record holders of stock of a national bank, regardless of whether they are the beneficial or merely record holders, are subject to the statutory liability imposed by section 63 (title 12, U.S.C.A.).

In Kenyon v. Fowler (C.C.A.2d Circuit), 155 F. 107, affirmed 215 U.S. 593, 30 S.Ct. 409, 54 L.Ed. 341, it was held that one who was notified that shares of stock in a national bank had been transferred into his name, although he had in fact no interest therein, and who indorsed the certificates in blank, but took no steps to have the stock transferred to the name of the true owner, cannot avoid liability for an assessment thereon made by the comptroller to meet the debts of the bank after its insolvency.

Also in Atkins v. Meacham (C.C.A.) 85 F.(2d) 929, at page 930, the court, in holding the defendant liable for the assessment as the owner of the life interest in the stock, said: "The stock was entered on the books of the bank in the name of the defendant and whatever may be claimed, with respect to the certificate for the twelve shares of stock, the defendant admittedly knew that the certificate for the ten shares was issued to her personally and it was on this ten shares that the assessment sued for was made. A person in whose name stock stands on the books of a bank and who knows this fact is liable to an assessment, and becomes estopped to deny that he is a stockholder. [And cases cited.]"

Neither can a pledgee of stock of a national bank escape liability unless the stock is registered in his name as pledgee. Rankin v. Fidelity Trust Co., 189 U.S. 242, 246, 23 S.Ct. 553, 47 L.Ed. 792; Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844.

In Germania National Bank v. Case, 99 U.S. 628, 25 L.Ed. 448, an oft quoted case (which incidentally is cited by the defendants as supporting their views), it was held that when a pledgee of bank stock has it transferred to his name he becomes the owner, and the liability of the pledgor for debts ceases, so that, even if thereafter the pledgee transfers it to a dummy, he remains liable. The court advanced three reasons for its decision. It said, (99 U.S. 628, at page 631, 25 L.Ed. 448): "For this several reasons are given. One is, that he is estopped from denying his liability by voluntarily holding himself out to the *public* as the owner of the stock, and his denial of ownership is inconsistent with the representations that he has made; another is, that by taking the legal title he has released the former owner; and a third is, that after having taken the apparent ownership and thus become entitled to receive dividends, vote at elections, and enjoy all the privileges of ownership, it would be inequitable to allow him to refuse the responsibilities of a stockholder." (Italics by the court.) See Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844; compare also, Concord First National Bank v. Hawkins, 174 U.S. 364, 367, 19 S. Ct. 739, 43 L.Ed. 1007.

As above mentioned, the defendants urge this case as sustaining their views. They claim that the underlying reason for the imposition of liability is lacking in respect to joint stock land banks because there is no provision, as in the case of national banks, that stock lists shall be open for inspection. Therefore, since creditors have no occasion to rely on stock lists, there can be no estoppel. It follows as a necessary corollary, they say, that ownership as used in the joint stock land banks is intended to connote unconditional proprietorship in the stock.

The court is of the opinion that at least the last two reasons assigned in the Germania Case, supra, for the imposition of statutory liability on record stockholders in national banks, are equally applicable to stockholders in joint stock land banks. With respect to the first reason (provision

for inspection of stock lists, 12 U.S.C.A. § 63), the same may very well apply to stockholders in joint stock land banks. To repeat, the Supreme Court said: "One is, that he is estopped from denying his liability by voluntarily holding himself out to the public as the owner of the stock."

I emphasize the employment of the word "public." It is debatable whether public means "public at large" or "creditors." If intended to mean the former, the reason advanced would be applicable to stockholders in joint stock land banks. Be that as it may, I am of the opinion as stated before that the two other reasons advanced by the court control the situation at bar.

The defendants urge upon the court that the difference in the language between the two statutes (section 63, "their stock"; section 812 "stock owned by them") as well as the conditions necessitating the passage of the Federal Farm Loan Act of 1916, together with the history of the Hollis-Buckley Bill, which, with amendments, was ultimately enacted as the Federal Farm Loan Act, clearly indicate a legislative intention to differentiate between stockholders of a national bank and those of a joint stock land bank. While the reasoning is persuasive in many respects, the court feels that not enough has been shown to warrant a departure from the rulings of a long line of cases which the court thinks are decisive of the issues presented.

Attempting to fathom legislative intent in the passage of laws has always been, and, I might venture to say, will always prove to be, a stumbling block for the courts, where there is nothing in the law itself to guide it. I am, however, persuaded that joint stock land banks possess enough of the characteristics of national banks to make applicable decisions thereunder interpreting the section dealing with stockholders' liability. A quotation from Judge Patterson's opinion, on one of the intermediate motions, hereinbefore referred to, will illustrate what I have in mind. He said (1 F.Supp. 788, 789): "Joint-stock land banks organized under the Federal Farm Loan Act have certain of the powers commonly associated with banks. They may lend money on farm mortgage security; they may receive deposits on public money; they may act as financial agents of the United States; they may do several other things that banks in New York do. 12 U.S.C.A. §§ 701, 781, 811, 813. It cannot be said that the word "bank" as applied to such an institution is entirely a misnomer. It is a moneyed corporation or banking association within the meaning of section 49. It follows that a suit to collect a statutory liability against stockholders of a joint-stock land bank, organized under the Federal Farm Loan Act is one that must be brought within three years under the New York law."

And, to carry the reasoning of Judge Patterson a bit further, I think it follows that suits to collect a statutory liability against stockholders of a joint stock land bank are therefore governed by the same principles as suits to collect statutory liability against stockholders of a national bank.

It appears to me to be helpful to examine the by-laws of the Ohio Joint Stock Land Bank of Cincinnati, Ohio. A material provision therefrom reads as follows: "Owner:—The bank shall be entitled to treat the person in whose name the stock stands on its records as the legal and equitable owner thereof and notice mailed to him at his address as appearing on the records of the corporation shall constitute due and lawful notice for all purposes."

Though I am in accord with the defendants that this provision of the by-laws standing alone creates no estoppel available to the plaintiffs, I think that this provision goes a long way in diluting the defendants' argument that joint stock land banks in their very nature precludes the imposition of statutory liability except upon proof of the absolute and unconditional owner of the stock.

I am further reinforced in my belief that the plaintiffs should prevail by the reasoning of our highest court in Germania National Bank Case, supra, from which I have quoted above at length.

I accordingly rule that the words "their stock" embodied in the National Banking Act (12 U.S.C.A. § 63), and "stock owned by them" found in the Joint Stock Land Bank (12 U.S.C.A. § 812), with respect to the impositions of statutory liability of stockholders of these respective banks are synonymous.

The court directs an interlocutory judgment in favor of plaintiffs against all defendants.