## FARRELL v. FLETCHER.

(District Court, D. Massachusetts.    June 18, 1926.)

Nos. 2205–2207, 2228.

1. **Banks and banking** ⊜⟶**249(1)—Individual liability of stockholders in national bank continues for sixty days after transfer of stock (Federal Reserve Act, § 23 [Comp. St. § 9689]).**

Under the provision of Federal Reserve Act, § 23 (Comp. St. § 9689), that stockholders "who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association * * * or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer," the liability of a stockholder who transfers his stock continues for sixty days thereafter as though no transfer had been made though the bank was solvent when the transfer was made, and, if failure occurs within the sixty days, the liability may be enforced.

2. **Banks and banking** ⊜⟶**249(1)—Stockholder in national bank assumes extension of liability after transfer, imposed by statute as part of his contract (Federal Reserve Act, § 23 [Comp. St. § 9689]).**

Where a stockholder in a national bank became such since the passage of Federal Reserve Act, the extension of his individual liability for sixty days after a transfer of his stock, provided by section 23 of Federal Reserve Act (Comp. St. § 9689), is a part of his contract.

At Law. Actions by James E. Farrell, receiver of the First National Bank of Warren, Mass., against Edward F. Fletcher, against Howard W. Cowee, against William J. Thayer, and against Edward F. Fletcher and others, executors. Judgment for plaintiff in each case.

Charles L. Favinger and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for plaintiff.

Hawley K. Rising and Storey, Thorndike, Palmer & Dodge, all of Boston, Mass., for defendants.

BREWSTER, District Judge. These four actions at law were tried together. They are brought to enforce the double liability imposed upon stockholders in national banking associations by the provisions of section 23 of the Federal Reserve Act. Act of December 23, 1913, 38 Stat. 273; Comp. Stat. § 9689. The questions presented and the material facts, except the amounts involved, are the same in each case, and can conveniently be considered in one opinion. In No. 2228 the defendants are sued in their representative capacity as executors under the will of Raymond B. Fletcher, deceased. For con-venience the word "defendants" in this opinion will be held to include the testator rather than the executors.

The cases were submitted on an agreed statement of facts, from which it appears that the First National Bank of Warren, Mass., was organized in 1919 with a capital stock of $50,000, divided into 500 shares of a par value of $100 each. It commenced business March 3, 1920. Each of the defendants became a stockholder in the bank at the time of its organization and continued as such until January 23, 1923, when the defendant Edward F. Fletcher sold 27 shares to one Abraham Goldman. The defendant Howard W. Cowee sold 133 shares—18 shares to said Goldman and 115 shares to one Frank L. Taylor. The defendant William J. Thayer sold 108 shares—28 to said Goldman and 80 to one Joseph B. Marcino, then known as "Edward Goldman." Raymond B. Fletcher sold 27 shares to said Goldman. All of said shares were sold for $140 a share, and were immediately transferred upon the books of the bank by the proper officers thereof and registered in the names of the transferees.

At the time of the sale and transfer, the bank was solvent and remained solvent until some time after February 5, 1923. The defendants Cowee and Thayer resigned as directors on January 23, 1923, and thereafter none of the defendants had any further connection with the bank as directors or officers and had no control over its affairs.

On or about February 6, 1923, the said Marcino took from the vaults of the bank securities constituting part of the assets of the bank, amounting to over $200,000. These securities were misappropriated by Marcino and were never recovered. As a result of the misappropriation, the bank was closed on February 21, 1923, and on February 23, 1923, a receiver was appointed. On said February 21, 1923, the bank failed to meet its obligations, and has, at all times thereafter, been insolvent and unable to pay its just and legal debts. Thereafter the Comptroller of Currency took appropriate steps to assess and make requisition upon all the shareholders of the bank to the extent of $100 upon each and every share of the capital stock of the bank held or owned by them respectively at the time of the failure. Formal notices of the assessment were mailed on March 15, 1923, to all stockholders of record February 21, 1923, the date of the failure.

On April 12, 1923, like notices were sent to the defendants, with a letter calling attention to the provisions of section 23 of the

Federal Reserve Act, and demanding of them the payment of the assessment in accordance with the terms of the formal demand of March 15, 1923.

[1] The transferees, Goldman, Taylor, and Marcino, have never paid their assessments. Suits have been brought against them, judgments recovered, and executions thereon issued. The executions have never been satisfied, and the receiver is unable to find any property of any of them than can be reached to satisfy the same. It is the contention of the plaintiff in these suits that each of the defendants is liable for the full amount of the assessment as a holder of record of shares in the bank 60 days before the date of failure. The defendants claim that they are not liable because, at the time of the transfers of the shares to Goldman, Taylor, and Marcino, the bank was entirely solvent and no failure impending. The issue thus joined involves the construction and application of section 23 of the Federal Reserve Act. This section reads as follows:

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent ·as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

As I understand the defendants' contention, it is that the application of the statute must be so limited that the double liability will not fall upon a stockholder who, in good faith and for valuable consideration, has parted with stock in a banking association which was entirely solvent at the time of the transfer, even though the transfer was made within 60 days from the date of the failure of the bank. They argue that a construction thus limiting the scope of the statute is imperative when the section is considered in the light of the history of the legislation and records of Congress.

Before the enactment of the Federal Reserve Act of 1913, the law imposing double liability upon stockholders in national banks was found in R. S. 5151, which, in substance provided that shareholders in national banking associations should be held individually responsible for the contracts, debts, and engagements of the association to the extent of the amount of their stock therein of the par value thereof, in addition to the amount invested in such shares. Under this statute, it was held that a registered owner of shares in national banks could not escape the individual liability imposed by the statute by transferring his stock with intent to avoid that liability, knowing, or having reason to believe, at the time of the transfer, that the bank was insolvent or about to fail. Such a transfer was deemed to be a fraud upon the creditors of the bank and could be treated as inoperative by the receiver and the transferor held liable. Germania National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Bowden v. Johnson, 107 U. S. 251, 2 S. Ct. 246, 27 L. Ed. 386; Stuart v. Hayden, 169 U. S. 1, 18 S. Ct. 274, 42 L. Ed. 639. But it was never suggested that a transfer was invalid or that the original stockholder would be liable if at the time of the transfer the bank was solvent. The later decisions intimated that a transfer to a transferee who was of ample means financially would be upheld, regardless of the condition of the bank, on the theory that the new owner was equally as able to respond to the double liability as the original shareholder. McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419. This case also intimated that the transferor could only be held liable if the insolvency was known, or ought to have been known, to him from his relations to the bank, "since the transfer is prima facie valid, and shifts to the transferee the burden of the responsibility, which can be laid upon the original stockholder only in case of bad faith, or evidence of a purpose to evade liability."

It will be presumed that Congress, in enacting section 23 of the Act of 1913, had these decisions in mind and knew that under the then existing state of the law shareholders could not defeat the purposes of R. S. § 5151, by fraudulently transferring their holdings in insolvent banks to persons financially irresponsible or unable to meet the assessment.

What then was the situation which had to be met by additional legislation? Under R. S. 5151, and the decisions dealing with the provisions of that statute and their effect, it might well have been thought that a transfer

of shares in a bank would release the transferor from personal liability under the statute if (a) he transferred the shares in good faith without knowledge of the insolvency of the bank, (b) if he transferred the shares to a party financially responsible and fully able to respond to the assessment, and (c) if he transferred shares in a solvent bank. This I conceive to be the legal aspect of the situation which confronted Congress when it was considering the Federal Reserve Act. It is quite likely that Congress was more impressed with the practical difficulties involved, because the report of the House Committee on Banking and Currency which reported out the act contains a reference to the practice which had sprung up on the part of stockholders in national banks of evading liability by transferring shares with full knowledge of impending failure to dummies of no financial responsibility. With this in mind, new provisions were inserted in the act which finally became a part of section 23. The added provisions pertinent to this inquiry were:

"The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

Referring to the 60-day clause, the Committee on Banks and Currency made this observation:

"It is believed that by making stockholders who have transferred their shares 60 days before a bank failure equally as liable as if they had not made such transfer, the needs of the situation will be met."

It becomes necessary to consider what changes were wrought in the law governing individual stockholder's liability by the new provisions that were incorporated in section 23. It cannot be doubted that since the enactment of this section the original stockholder does not escape liability by showing that at the time of the transfer he had no knowledge of the insolvency if the transfer was made 60 days prior to the date of failure. The new provisions relieved the government in such a case of the burden of establishing the stockholder's knowledge of the insolvent condition. Transfers made with knowledge of the failing condition seem to stand as they did under the earlier statute. It is equally clear that under the new section such original stockholder, transferring within 60 days, guarantees to a certain extent that the transferee will meet his liability under the statute. The logical result of the Act, as I view it, is to extend the individual stockholder's liability, not only to those who are stockholders of record at the time of failure, but also to former stockholders if they fall within one of the following classes: (a) Those who have been stockholders within 60 days prior to failure, and (b) those who disposed of their holdings more than 60 days prior to failure, with knowledge of such impending failure. Whether the statute reaches those of the first class if the bank was solvent at the time of the transfer is the real question presented. It is earnestly argued by the defendants here that the admitted solvency of the bank operates to exempt them from the provisions of the statute. This contention is based on the proposition that the provisions of section 23 of the Federal Reserve Act no more apply to transfers of shares in a solvent bank than did the provisions of R. S. 5151. It is true that the right of creditors of a national bank to look to the individual liability of shareholders to the extent indicated by the statute, for its contracts, debts, and engagements, attaches when the bank becomes insolvent. Stuart v. Hayden, supra. But that is merely stating that the right to enforce a liability does not arise until the fact of the insolvency exists. The liability, however, exists the moment one enters into the relationship of shareholder. As has been said in the Supreme Court: "The individual liability of the stockholders is an essential element in the contract by which the stockholders became members of the corporation. * * * Its obligation becomes a part of every contract, debt, and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation." Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864.

[2] The Federal Reserve Act was in force at the time the defendants, by subscribing and accepting shares in the bank, assumed the relationship of stockholder in the First National Bank of Warren. Each assumed all the individual liability which Congress had then seen fit to impose for the protection of those who dealt with the bank. They were stockholders in a national banking association who had transferred their shares or reg-

istered the transfer thereof within 60 days next before the date of the failure of such association to meet its obligations. The bank has become insolvent. The receiver, as representative of the creditors dealing with the bank, is seeking to enforce the rights secured to them by this legislation. I can find nothing in the statute which would warrant me in ruling that the defendants are relieved of this liability by virtue of the fact that at the time of the transfers the bank was solvent.

The language employed by those who framed section 23 is free from ambiguity. The meaning is unmistakable, if the words are given their usual meaning. I cannot see in the terms of the statute any grounds on which to base a distinction between transfers in banks that are solvent and transfers in banks that are insolvent. It is entirely competent for Congress to provide that the liability of the stockholder shall not terminate upon the transfer of his shares but shall continue for a period of 60 days thereafter, and if, within that period of time, the rights of creditors ripen by reason of insolvency, the liability can be enforced. I am aware that such construction works a hardship upon innocent stockholders who have been unfortunate enough to dispose of their stock to parties who not only turn out to be financially irresponsible but who within a few days succeed in wrecking the bank, but I can see no escape from the conclusion which I have reached. I do not think the language of the act admits of the construction for which the defendants contend. If Congress had deemed it wise to limit the 60-day provision to transfers in insolvent banks only, it could easily have made provisions to that end. While it may fairly be presumed that any failing bank would not be in a sound financial condition 60 days before the failure, yet experience teaches that sudden losses, through embezzlement or other causes, may quickly bring about the downfall of a banking association which 60 days before was entirely solvent. To now say by judicial interpretation that one was relieved of stockholders' liability by a transfer made less than 60 days prior to the failure because, at the time of the transfer, the bank happened to be solvent, would be to read into the statute something which is not there, expressly or by implication. It would be to amend the act to relieve a situation which, to the court, appears to be unduly harsh. The court cannot afford relief by amending legislation. This limitation on the powers of the court is too well recognized to need supporting citations.

I find and rule, therefore, that the plaintiff is entitled to recover in law No. 2205 against Edward F. Fletcher the sum of $2,-700; in law No. 2206 against Howard W. Cowee the sum of $13,300; in law No. 2207 against William J. Thayer the sum of $10,-800; in law No. 2228 against Edward F. Fletcher et al., executors, the sum of $2,700 —together with interest on said sums from April 17, 1923.